1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6

7    WHATSAPP INC.,                           Case No.  13-cv-04272-JST
              Plaintiff,
8
9         v.                                  **ORDER CONSTRUING CLAIMS OF**
                                              **UNITED STATES PATENT NOS.**
10   INTERCARRIER COMMUNICATIONS,             **6,985,748 AND 8,483,729**
     LLC,
                                              Re: ECF No. 67
11            Defendant.

12          In this declaratory judgment and patent infringement action, the parties seek construction

13   of twelve terms used in the two patents-in-suit.

## I.    BACKGROUND

### A.    The Patents-in-Suit and Remaining Asserted Claims

16          On September 15, 2013, Plaintiff WhatsApp Inc. ("WhatsApp") filed this action seeking a

17   declaratory judgment that its products and services do not infringe U.S. Patent No. 6,985,748 ("the

18   '748 patent), and that the '748 patent is invalid.  ECF No. 1, at ¶ 22, 26.  In an earlier action in the

19   Eastern District of Virginia, <u>Telecommunication Systems, Inc. v. Mobile 365, Inc.</u>, Defendant and

20   Counter-Plaintiff Intercarrier Communications LLC ("ICC") sued WhatsApp for infringing the

21   '748 patent.  <u>Id.</u> at ¶ 4.  On September 13, 2013, the Virginia court dismissed the claims against

22   WhatsApp for lack of personal jurisdiction.  <u>Id.</u> at ¶ 10.  WhatsApp filed this action two days later.

23   In its answer, ICC denied the allegations in the complaint and counterclaimed, alleging

24   infringement of two of ICC's patents: the '748 patent and U.S. Patent No. 8,483,729 ("the '729

25   patent").  ECF No. 22.  WhatsApp then counterclaimed as to the '729 patent, alleging that this

26   patent is not infringed and is invalid.  ECF No. 24.  The following chart identifies the two patents-

27   in-suit and the remaining asserted claims.

28

| Patent | Claims |
|---|---|
| U.S. Patent 6,985,748 | 1, 3, 4, 5, 6, 9, 12, 14, 17 |
| U.S. Patent 8483,729 | 1, 2 |

**B.      The '748 Patent**

The '748 patent, entitled "Inter-carrier messaging service providing phone number only experience," claims an inter-carrier service enabling a subscriber to send short messages to a subscriber in a different carrier's network addressed only with a phone number.  The phone number only experience is provided by a database associating subscriber numbers with servicing carriers and a database associating carriers with routing syntax.  If the recipient is outside the sender's carrier network, the inter-carrier messaging module determines the appropriate carrier for the recipient, appends the appropriate syntax to the short message to allow standardized communication techniques between carriers, and routes the short message to the destination carrier.  The recipient may reply to the sender using only the subscriber's directory number.

All twelve of the terms at issue are found in this patent.

**C.      The '729 Patent**

The '729 patent is also entitled "Inter-carrier messaging service providing phone number only experience."  It similarly claims an inter-carrier service routing subscriber to subscriber digital messages between carriers' networks.  Subscribers may send digital messages containing user data to a subscriber in another carrier's network addressed only with a phone number.  If the recipient is outside the sender's carrier network, the inter-carrier messaging module determines the appropriate carrier for the recipient, appends the appropriate syntax to the digital message containing user data to allow standardized communication techniques between carriers, and routes the message to the destination carrier.  The recipient may reply to the sender using only the subscriber's directory number.

Ten of the twelve terms at issue are found in this patent.

**II.      LEGAL STANDARD**

2

United States District Court
Northern District of California

The construction of patent claim terms is a matter of law for the court.  Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996).  A "bedrock principle" of patent law is that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005).  In construing a patent term, the "objective baseline" is the "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention[.]"  Id. at 1313.  "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification" and the prosecution history.  Id.

The "primary basis for construing [a] claim" and "the best source for understanding a technical term" is a patent's intrinsic evidence.  Id. at 1314.  Intrinsic evidence includes the patent and its file history, including any reexaminations and reissues, related patents and their prosecution histories, and the prior art that is cited or incorporated by reference in the patent-in-suit and prosecution history.  Id.  Extrinsic evidence refers to all other types of evidence, including inventor testimony, expert testimony, documentary evidence of how the patentee and alleged infringer have used the claim terms, dictionaries, treatises, and other similar sources.  Id. at 1318. The intrinsic evidence trumps any extrinsic evidence that would contradict it.  Id. at 1314.

## III.    DISCUSSION

### A.    "carrier(s)" – '748 patent claims 1, 6, 14 and '729 patent claim 1

| WhatsApp's proposed construction | ICC's proposed construction |
|---|---|
| "wireless cellular telephone service provider (such as Sprint, Verizon, AT&T, etc.)" | "a phone network such as Sprint, Verizon, AT&T, etc." |

**The Court adopts WhatsApp's proposed construction.**

The parties' briefing concerning this claim centers on the "wireless cellular" language proposed by WhatsApp.  WhatsApp persuasively contends that the intrinsic evidence, specifically the prosecution history, makes clear that a "carrier" is a "wireless cellular telephone carrier." Phillips instructs that "[t]he purpose of consulting the prosecution history in construing a claim is

to exclude any interpretation that was disclaimed during prosecution." 415 F.3d at 1317. A

prosecution disclaimer must be "a clear and unmistakable disavowal of scope during prosecution."

Purdue Pharma L.P. v. Endo Pharms. Inc., 438 F.3d 1123, 1136 (Fed. Cir. 2006); see also ACCO

Brands, Inc. v. Micro Sec. Devices, Inc., 346 F.3d 1075, 1078 (Fed. Cir. 2008) ("Statements made

during prosecution which clearly disclaim a particular claim interpretation will limit the scope of

the claims."); Saffran v. Johnson & Johnson, 712 F.3d 549, 559 (Fed Cir. 2013) ("[A]n applicant's

argument that a prior art reference is distinguishable on a particular ground can serve as a

disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as

well.") (citation omitted). Here, WhatsApp points to the patentee's statements, in response to an

action invalidating the claims in light of several prior art references, that "within the context of the

'748 patent, the term 'carrier' refers to wireless cellular telephone carriers." ECF No. 60-4, at 9,

18, 25. The patentee explicitly distinguished the prior art for allegedly not disclosing wireless

cellular telephone carriers. Id. These statements constitute a "clear and unmistakable disclaimer."

The disclaimer applies with equal force to the clearly linked claim in the subsequent '729 patent.

See Elkay Mfg. Co. v. Ebco Mfg. Co., 192 F.3d 973, 980 (Fed. Cir. 1999).

ICC argues that the patentee's statements describing the invention as relating to "wireless

cellular telephone carriers" were not made to distinguish "wireless cellular telephone carriers"

from other types of carriers; rather, they distinguished other systems broadly directed to

communications. For this reason, in ICC's view, the statements do not rise to the level of a "clear

and unmistakable disclaimer." Furthermore, no claim reciting the term "carriers" references the

"wireless cellular" limitation proposed by WhatsApp. See Braintree Labs. v. Novel Labs., 749

F.3d at 1354–55 ("In construing claims, the analytical focus must begin and remain centered on

the language of the claims themselves."). In addition, ICC reads the specification to suggest that

a "cellular carrier" is merely one example of a type of carrier. '748 patent, at 13:7. Viewing the

claims and specification alone, ICC may have the better proposed construction, but the

prosecution history "often inform[s] the meaning of the claim language by demonstrating how the

inventor understood the invention and whether the inventor limited the invention in the course of

prosecution, making the claim scope narrower than it would otherwise be." Phillips, 415 F.3d at

United States District Court
Northern District of California

1317.  Here, the patentee's statements during prosecution defining the term "carrier" in the context of the '748 patent as "wireless cellular telephone carrier" were in no way ambiguous, and the Court concludes that they constitute a clear and unmistakable disclaimer.

The Court further concludes that the claims and specification support WhatsApp's proposed "service provider" formulation, rather than ICC's "network" formulation.  Both the '748 patent and the '729 patent reference a "carrier providing service" to a phone number.  <u>See, e.g.</u>, '748 patent, at 13:54–55, 13:59–60, 14:33–34, 14:38–39; '729 patent, at 14:11.  They also reference a "carrier's network," suggesting that "carrier" and "network" are not synonymous.  <u>See, e.g.</u>, '748 patent, at 2:43, 2:51; '729 patent, at 2:61, 2:64–65.

ICC notes that its proposed construction parallels the Virginia court's implicit construction of the term "carrier," embedded within its construction of the broader phrase, "Inter-carrier Messaging Module."  ECF No. 60-3, at 6.  In light of the available intrinsic evidence, the Court declines to adopt this prior construction.  The Court notes that the Virginia court did not include a discussion of its analysis in its claim construction order and that the record does not indicate that the parties in <u>Mobile 365</u> proffered competing definitions of "carrier" in the context of their dispute concerning the meaning of "Inter-carrier Messaging Module."

**B.**   **"[digital message packet] addressed with only a phone number" – '748 patent claim 1 and '729 patent claim 1**

**"[digital message packet] addressed to a phone number only" – '748 patent claims 6, 14 and '729 patent claim 1**

**"addressed with only a phone number" – '748 patent claims 1, 6, 14 and '729 patent claim 1**

**"addressed to a phone number only" – '748 patent claim 6 and '729 patent claim 1**

| WhatsApp's proposed construction | ICC's proposed construction |
|---|---|
| "[digital information including a header with network addressing information and a body] wherein the phone number is the only information for directing the packet to the destination" | digital message packet: "a unit of information transmitted from one device to another on a network"<br><br>addressed with only a phone number; addressed to a phone number only: "the only address |

5

| WhatsApp's proposed construction | ICC's proposed construction |
|---|---|
| | information of the digital packet (or digital message packet) provided by the sender is a phone number" |

**The Court adopts WhatsApp's proposed construction of "digital message packet" and adopts ICC's proposed construction of "addressed with only a phone number" and "addressed to a phone number only."**

This term involves two disputed elements.  First, the parties dispute the meaning of the term "digital message packet."  This term is not defined in the specifications or the prosecution history.  WhatsApp points to contemporary dictionaries to support its argument that those of ordinary skill in the art at the time the patents-in-suit were filed would have understood the claim language to refer to a common data format including a header with addressing information and a body, or payload, including the text of the message.  <u>See, e.g.</u>, ECF No. 61-4, at 5; ECF No. 63, at 7.  Technical dictionaries "can assist the court in determining the meaning of particular technology to those of skill in the art of the invention."  <u>Atofina v. Great Lakes Chem. Corp.</u>, 441 F.3d 991, 996 (Fed. Cir. 2006) (citing <u>Phillips</u>, 415 F.3d at 1318).  However, "the court must ensure that any reliance on dictionaries accords with the intrinsic evidence."  <u>Id.</u>  The dictionaries cited by WhatsApp demonstrate that a "message packet . . . consists of headers and a data portion."  ECF No. 63, at 6.  The headers contain "control information such as . . . [the] address of the destination or target device," and the "text or payload" consists of "the data to be transmitted."  <u>Id.</u> at 7; <u>see also</u> ECF No. 61-4, at 5.  This construction is consistent with claim 6 of the '748 patent, which describes a "means for formulating a new digital message packet including a body of [the] initial message packet and newly addressed" to the destination phone number.  '748 patent, at 14:35–39.

ICC proposes that the term "digital message packet" should be construed broadly to include different types of information and formatting, and that the term, on its own, does not require a "body."  ICC contends that its broad construction is supported by language in the claims.  <u>See</u> <u>Braintree</u>, 749 F.3d at 1354–55 ("the analytical focus must begin and remain centered on the language of the claims themselves").  Specifically, it references claims 2 and 5, which depend

United States District Court
Northern District of California

1  from claim 1 and which refer to "an e-mail" and "a short text message" as types of "digital

2  message packets." However, ICC does not explain why an email or short text message would not

3  fit within a definition of "digital message packet" requiring a header with addressing information

4  and a body. ICC also notes that its construction mirrors the construction adopted by the Virginia

5  court in Mobile 365, see ECF No. 60-3, at 6, but, as explained above, the Virginia court's claim

6  construction order does not include analysis of that court's construction of the claims, and the

7  Court therefore declines to simply adopt its constructions.

8          The parties agree that the "phone number only" phrases should be construed together, but

9  dispute whether the phone number is "the only information for directing the packet" (WhatsApp's

10  view) or "the only address information provided by the sender" (ICC's view). The Court adopts

11  ICC's construction of this term, which is focused on the user's perspective. This emphasis is

12  supported by the titles of the patents, the abstracts, and language in the claims of the '748 patent

13  describing the "apparatus for providing a phone number only experience to a subscriber." See,

14  e.g., '748 patent, at 14:47–48. The claims and specifications describe a service in which the

15  sender addresses a message using only the recipient's phone number, but additional information,

16  i.e. routing syntax, is appended to the message in order to effect delivery. WhatsApp's

17  construction, requiring that the phone number is "the only information for directing the packet,"

18  would exclude from the scope of the claims the majority of the preferred embodiments, and should

19  therefore be rejected. See On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer, 386 F.3d 1133,

20  1138 (Fed. Cir. 2004) ("a claim interpretation that excludes a preferred embodiment from the

21  scope of the claim is rarely, if ever, correct") (quotation omitted).

22          WhatsApp paraphrases its proposed construction as meaning that a message is received at

23  the message distribution center addressed only with a phone number, relying in part on the

24  patentee's statements to the Patent Office distinguishing prior art on the basis that it did not "teach

25  or suggest an inter-carrier message module to receive a digital message addressed with only a

26  phone number." ECF No. 63-1, at 12. But WhatsApp's proposed construction goes beyond this

27  meaning to suggest that the phone number must be the only information used to direct the

28  message, either before or after it is received at the message distribution center. Furthermore, as

United States District Court
Northern District of California

ICC points out, the specification indicates that additional information might be used to transmit messages both to and from the message distribution center.  See '748 patent Fig. 8.  The Court concludes that the "phone number only" terms describe the information provided by the sender, rather than all information used to direct the message, and therefore adopts ICC's proposed construction of this term.

**C.**   **"associating subscriber phone numbers with servicing carriers" – '748 patent claim 1**

   **"associating a carrier providing service to said phone number" – '748 patent claim 6**

   **"associating a different carrier providing service to said phone number" – '729 patent claim 1**

| WhatsApp's proposed construction | ICC's proposed construction |
| --- | --- |
| plain and ordinary meaning | "associating or linking a subscriber phone number with the carrier that provides service to that phone number" |

**The Court agrees with WhatsApp that these terms do not require construction.**

The parties agree that the word "associating" should not be expanded beyond its ordinary meaning, ECF No. 77, at 10, but ICC asks the Court to construe the word "associate" to mean "associate or link," arguing that such a construction "reflects the breadth of the claims, avoids future ambiguity, and will assist the jury," ECF No. 67, at 17.  The Virginia court followed this path in its construction of a similar term in the Mobile 365 litigation.  ECF No. 60-3, at 7. However, the Court concludes that, in this context, the non-technical term "associate" is easily understood and does not require construction.  ICC points to nothing in the claims, specifications, or file history that lends the term any special meaning that should be clarified for a jury.  It suggests only that its proposed construction will avoid future fights about the meaning of the word "associate."  Here, where the claim language is straightforward and the parties have not identified a current dispute about the meaning of the word "associate," the Court declines to construe these claim terms.

**D.      "routing syntax" – '748 patent claim 1**

        **"syntax" – '729 patent claim 1**

| WhatsApp's proposed construction | ICC's proposed construction |
|---|---|
| "information which, when attached to or inserted within a telephone number, enables a message to be routed" | "information which when attached to or inserted within a message, enables the message to be routed" |

**The Court adopts WhatsApp's proposed construction.**

Both parties agree that "syntax" or "routing syntax" is information that enables a message to be routed.  They dispute whether syntax must be attached to or inserted within a telephone number (WhatsApp's construction), or whether it is more generally attached to or inserted within a message (ICC's construction).  ICC insists that WhatsApp's construction would limit all claims to a particular preferred embodiment.  In ICC's view, the claims do not require that the syntax be attached to the phone number, and furthermore, the specification teaches that the syntax may either be appended to the phone number or, more generally, to the message.  See '748 patent, at 5:64–6:3 ("The Inter-Carrier messaging module . . . appends the appropriate syntax to the short message . . .").

WhatsApp persuasively contends that the specifications' description of "the present invention" forecloses ICC's construction.  Most significantly, the specifications state:

> While the embodiments of the present invention relate to the addition of syntax to the end of a phone number (i.e., appending the syntax), the present invention relates equally to the addition of a prefix to the phone number, the insertion of syntax information within the phone number, and/or to the addition of suffix information at the end of the phone number."

'748 patent, at 10:61–77; '729 patent, at 10:65–11:3.  This reference to "the present invention" strongly suggests that the claimed invention requires the addition of syntax to the phone number, rather than to any other part of the message.  See Trading Techs. Int'l, Inc. v. eSpeed, Inc., 595 F.3d 1340, 1353–54 (Fed. Cir. 2010); Honeywell Int'l, Inc. v. ITT Indus., 452 F.3d 1312, 1318 (Fed. Cir. 2006).  In Trading Technologies, the Federal Circuit, relying on a similar statement in

9

United States District Court
Northern District of California

1   the specification about the reach of the "present invention," observed that although "this

2   interpretation relies heavily on the specification and risks reading improperly a preferred

3   embodiment into the claim[,] . . . [the] court takes some comfort against this risk from the

4   inventors' use of the term 'the present invention' rather than 'a preferred embodiment' or just 'an

5   embodiment.'" 595 F.3d at 1353–54. This "comfort" is increased here where the inventor not

6   only used the term "the present invention," but also reached beyond the embodiments of the

7   present invention, which involved adding syntax to the end of a phone number, to include the

8   addition of syntax to the beginning of or within the phone number, but did not claim the addition

9   of syntax to any other part of the message.

10       This statement is reinforced by other passages in the specifications describing the syntax as

11   attached to a phone number. See, e.g., '748 patent at 6:11–19, 11:37–47; see also Hologic, Inc. v.

12   SenoRx, Inc., 639 F.3d 1329, 1338 (Fed Cir. 2011) (relying on "consistent[] and exclusive[]"

13   usage in the specification as demonstrating "clearly what the inventors of the [] patent conceived

14   of"). Although ICC claims that in one passage, the specification references syntax being generally

15   appended to the message, see '748 patent, at 5:64–6:3, WhatsApp persuasively explains that this

16   excerpt of the specification is not inconsistent with the more specific statements that follow later

17   in the specification. The excerpt broadly references adding syntax to the message, but does not

18   detail how the syntax is added; when the patent does describe the addition of the syntax, it clearly

19   and consistently indicates that it is attached to the phone number. ICC's arguments that this

20   construction improperly limits the scope of claims 6 and 14 and renders language in claim 1

21   superfluous are similarly unavailing in light of the inventor's clear statements in the specifications.

22   **E.   "associating carriers with routing syntax" – '748 patent claim 1**

23       **"associated with said carrier providing service to said phone number" – '748**
24       **patent claims 6, 14 and '729 patent claim 1**

| WhatsApp's proposed construction | ICC's proposed construction |
|---|---|
| plain and ordinary meaning | "associating or linking a carrier providing service to a subscriber phone number with the 'routing syntax' necessary to route a message to |

10

| WhatsApp's proposed construction | ICC's proposed construction |
|---|---|
| | a carrier" |

**The Court agrees with WhatsApp that these terms do not require construction.**

The parties' positions and arguments with respect to these terms echo their positions and arguments with respect to "associating subscriber phone numbers with servicing carriers," "associating a carrier providing service to said phone number," and "associating a different carrier providing service to said phone number," discussed in Part III.C.  In addition, beyond the dispute concerning the term "associate," WhatsApp correctly notes that ICC has offered no reason to construe these ordinary and non-technical phrases in addition to the terms "carrier" and "routing syntax."

**F.     "add routing syntax determined from said lookup to said phone number" – '748 patent claim 1**

**"newly addressed to said phone number with a syntax" – '748 patent claims 6, 14, and '729 patent claim 1**

| WhatsApp's proposed construction | ICC's proposed construction |
|---|---|
| **add routing syntax determined from said lookup to said phone number:** appending the routing syntax to the phone number to create a single list of characters | **add routing syntax determined from said lookup to said phone number:** no construction necessary |
| **newly addressed to said phone number with a syntax:** appending the routing syntax to the phone number to create a single list of characters | **newly addressed to said phone number with a syntax:**  newly addressed to the phone number with a syntax |

**The Court concludes that these terms do not require construction.**

Although this dispute involves two separate phrases, they relate to one dispute: ICC effectively proposes the plain and ordinary meaning for each phrase, whereas WhatsApp contends that the elements should be construed to have the same meaning, i.e. "appending the routing syntax to the phone number to create a single list of characters."  The Court finds WhatsApp's proposal unconvincing.  First, WhatsApp introduces the phrase "to create a single list of

11

characters," describing this as "the plain meaning of the simple words of the claims."  ECF No.

72, at 20.  But this phrase does not appear in the claims, and WhatsApp fails to explain why, if the

creation of a single list of characters is "the plain meaning," this construction is necessary to

define the proper scope of the invention or to assist the jury in understanding the claims in the

context of the patent and its file history.

Second, WhatsApp defines the word "add" to mean "append," citing "the frequent and

interchangeable use of 'add' and 'append'" and non-technical dictionaries that "consistently define

'adding' as expressing the principle of joining one thing with another."  ECF No. 72, at 21.  But

the Court may consult dictionaries only "so long as the dictionary definition does not contradict

any definition found in or ascertained by a reading of the patent documents."  Phillips, 415 F.3d at

1322–23.  Here, the patent documents define "appending" as one type of "adding."  See '748

patent, at 10:50–52 ("adding, (e.g., appending)").  Both specifications state:

> While the embodiments of the present invention relate to the
> addition of syntax to the end of a phone number (i.e., appending the
> syntax), the present invention relates equally to the addition of a
> prefix to the phone number, the insertion of syntax information
> within the phone number, and/or to the addition of suffix
> information at the end of the phone number."

'748 patent, at 10:61–77; '729 patent, at 10:65–11:3.  This passage demonstrates that, in the

context of the patents-in-suit, the term "add" is used to describe not only appending, defined as

adding to the end of a phone number, but also adding to the beginning or middle of a phone

number.  This intrinsic evidence trumps any extrinsic evidence, including dictionary definitions,

that might contradict it.  Phillips, 415 F.3d at 1314.

Finally, WhatsApp contends that the two phrases share the same meaning, but provides

scant explanation for its suggestion that the Court should effectively rewrite the remaining claims

to match claim 1 of the '748 patent, other than to state that it is "evident by the plain meaning of

the claim."  ECF No. 72, at 22.

ICC generally proposes the ordinary meaning of the phrases, in line with the Virginia

court's construction.  See ECF No. 60-3, at 6.  The Court concludes that, especially in view of the

fact that it is construing the terms "syntax" and "routing syntax," there is no need to construe these

12

United States District Court
Northern District of California

1    terms. They are not technical terms, and WhatsApp's proposed construction will not clarify the

2    claims for the jury.  However, the Court agrees with WhatsApp that ICC's proposed replacement

3    of the word "said" with "the" in the phrase, "newly addressed to said phone number with a syntax"

4    is not helpful.  Accordingly, the Court declines to construe either term.

5           **G.      "service bureau" – '748 patent claims 9, 17 and '729 patent claim 2**

| WhatsApp's proposed construction | ICC's proposed construction |
| --- | --- |
| "third party provider of telecommunication services to carriers" | "one or more servers in a hosted environment outside the carrier network" |

           **The Court adopts a modified version of WhatsApp's proposed construction.**

           The parties agree that the term "service bureau" is not plain on its face, and requires

construction.  The specification appears to define "service bureau" as an "Inter-Carrier service

provider," see '748 patent, at 10:17–18, 10:41; '729 patent, at 10:21–22, 10:45, but neither party

proposes this construction.

           ICC relies principally on the following passage in the specification to support its proposed

construction: "The MDC including the Inter-Carrier messaging module preferably includes a

carrier-grade Wireless Internet Gateway (WIG) . . . in a hosted environment (e.g. a service

bureau)." '748 patent, at 6:26–32.  However, the inclusion of the phrase "hosted environment"

merely substitutes one term in need of construction for another, and ICC provides little support for

its use of the word "server."

           WhatsApp relies on cited prior art to the patents-in-suit and technical dictionaries from the

time of the invention to support its construction.  The cited prior art provides examples, but no

definition, of this claim term.  The technical dictionaries provide more guidance, defining "service

bureau" as "an organization that provides data processing services and access to software

packages for a fee," ECF No. 72-4, at 22; or "an organization that provides data processing and

timesharing services," id. at 28.  This extrinsic evidence is consistent with intrinsic evidence in the

specification suggesting that, in the context of the patents-in-suit, a "service bureau" is an "Inter-

13

United States District Court
Northern District of California

1  Carrier service provider."  See '748 patent, at 10:17–18, 10:41; '729 patent, at 10:21–22, 10:45.

2        ICC opposes WhatsApp's proposed limitation of the term service bureau to denote only an

3  entity that provides services to "carriers," objecting that this proposal is inconsistent with the

4  patents claiming an invention relating to "messaging services provided between different carriers

5  and/or between subscribers."  See '748 patent, at 1:18–20; see also On-Line Techs, 386 F.3d at

6  1138 ("a claim interpretation that excludes a preferred embodiment from the scope of the claim is

7  rarely, if ever, correct") (quotation omitted).  This objection is unpersuasive, because the

8  specification's references to "service bureaus" uniformly involve inter-carrier communications.

9  On the other hand, ICC persuasively refutes WhatsApp's suggestion that a service bureau must be

10  a "third party provider."  The specification contemplates that a carrier might subscribe to, own, or

11  maintain an Inter-Carrier service provider, later equated to a "service bureau," and therefore does

12  not contemplate the third party restriction proposed by WhatsApp.  See '748 patent, at 7:4–10,

13  10:41.  Accordingly, the Court adopts WhatsApp's construction, modified to eliminate the third

14  party limitation.

15        H.        "short text message" – '748 patent claims 5, 12

| WhatsApp's proposed construction | ICC's proposed construction |
| --- | --- |
| Indefinite or, in the alternative: "SMS text message" | Ordinary meaning |

        **The Court adopts WhatsApp's alternate construction.**

        Although ICC relies on a passage in the specification defining the term "short message" as

"typically a textual message, e.g. a paging message, e-mail or a voice mail message passed to

and/or from various types of communication devices," '748 patent, at 1:37–39, to support its

argument that this term references a broad category of short messages (including but not limited to

SMS messages), the context of this excerpt makes clear that the inventions relate "particularly" to

"short message service (SMS) messaging services," '748 patent, at 1:17–18.  The passage ICC

14

United States District Court
Northern District of California

1   relies upon appears within a description of the background technology; the section introduces

2   SMS, and then explains how the invention fits within the existing SMS landscape.  The

3   specification distinguishes "short message services" related to the patent from "text based paging

4   services" on the basis of the possibility of bi-directional communication.  '748 patent, at 1:51–53.

5   The background section concludes by stating, "There is a need for providing subscribers of

6   wireless carriers in the United States a phone number only experience, to facilitate and ensure the

7   adoption and popularity of SMS messaging in general, and e-mail messaging in particular, in a

8   mobile environment."  '748 patent, at 4:40–44.  If SMS messaging includes e-mail messaging, and

9   "short text message," as used in the patent, necessarily excludes text based paging services, it is

10  unclear what a "short text message" might denote other than an SMS message.  In view of this

11  intrinsic evidence within the specification, the Court adopts WhatsApp's alternate construction.

12          The Court rejects WhatsApp's argument that this claim term is indefinite under 35 U.S.C.

13  § 112, ¶ 2, which requires that the claims of a patent "particularly point[] out and distinctly claim[]

14  the subject matter which the applicant regards as his invention."  The definiteness requirement

15  mandates "that a patent's claims, viewed in light of the specification and prosecution history,

16  inform those skilled in the art about the scope of the invention with reasonable certainty."

17  Nautilus, Inc. v. Biosig Instruments, Inc., 134 S.Ct. 2120, 2129 (2014).  In undertaking this

18  inquiry, the Court accords "respect to the statutory presumption of patent validity, see 35 U.S.C. §

19  282."  Bancorp Services, L.L.C. v. Hartford Life Ins. Co., 359 F.3d 1367, 1371 (Fed. Cir. 2004).

20  Close questions of indefiniteness are therefore properly resolved in favor of the patentee.  Id.

21  Here, although it is true that the term "short," read alone, is a subjective term of relative degree

22  that might introduce ambiguity into the claims of the patent, WhatsApp has not overcome the

23  presumption of patent validity by demonstrating that those skilled in the art would be unable to

24  understand the claims, read in light of the specification.

25      **I.     "means for associating a carrier providing service to said phone number" –
                '748 patent claim 14**

26

| WhatsApp's proposed construction | ICC's proposed construction |
| --- | --- |
|  |  |

27

28

| WhatsApp's proposed construction | ICC's proposed construction |
|---|---|
| **Function:** associating a carrier providing service to said phone number<br><br>**Structure:** Inter-Carrier Messaging Module 100, MIN/Carrier database 110, as disclosed in '748 Patent Figs. 3, 4 and 6 and described in 9:63–10:13 and 11:30–33 | **Function:** associating a carrier providing service to said phone number<br><br>**Structure:** MIN/Carrier database 110, as shown in Figs 3 (reference numeral 110), 4 and 6, and described in '748 patent at 9:63–10:13, and equivalents thereof |

**The Court adopts ICC's proposed construction of this term.**

The parties agree that this is a "means-plus-function" term governed by 35 U.S.C. § 112(f), which is "construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." "Construction of a means-plus-function limitation involves two steps. First, the court must identify the claimed function. Second, the court must identify the corresponding structure in the specification that performs the recited function." Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC, 677 F.3d 1361, 1367 (Fed. Cir. 2012) (citation omitted). The "specification must be read as a whole to determine the structure capable of performing the claimed function." Id. The parties agree on the function of this claim element and one portion of the corresponding structure, the MIN/Carrier database. They dispute whether the "Inter-Carrier messaging module 100" should also be cited as part of the structure, with ICC arguing that it should not be included, in line with the Virginia court's construction, and WhatsApp proposing that it should be included.

WhatsApp contends that the Inter-Carrier Messaging Module should be included because the specifications describe the "associating a carrier providing service to a phone number" function as taking place in the Inter-Carrier Messaging Module, which has "MIN/carrier/carrier routing look-up capabilities" and "returns with the name of the carrier." '748 patent, at 5:54–55, 11:21–33. But ICC persuasively counters that these "look-up capabilities" and "return[ing] with the name of the carrier" are separate and additional functions not required by this element, which is limited to "associating a carrier providing service to said phone number." This "associating" function is performed by the MIN/Carrier database alone.

WhatsApp offers no reason why the statutory language, "and equivalents thereof" should not be included in the construction of this term.  Accordingly, the Court adopts ICC's proposed construction of this term.

> **J.** **"means for formulating a new digital message packet including a body of said initial digital message packet and newly addressed to said phone number with a syntax associated with said carrier providing service to said phone number" – '748 patent claim 14**

| WhatsApp's proposed construction | ICC's proposed construction |
|---|---|
| **Function:** formulating a new digital message packet including a body of said initial digital message packet and newly addressed to said phone number with a syntax associated with said carrier providing service to said phone number<br><br>**Structure:** Inter-Carrier Messaging Module 100, Carrier Routing Table 120, as disclosed in '748 Patent Figs. 5 and 6 and described in 10:14–67 and 11:34–47 | **Function:** formulating a new digital message packet including a body of said initial digital message packet and newly addressed to said phone number with a syntax associated with said carrier providing service to said phone number<br><br>**Structure:** Carrier routing table, as shown in Figs. 5, 6 (reference number 120) and 7, used by messaging module (also shown in Fig. 6) to automatically add appropriate syntax, as described in '748 patent 5:64–6:3 and 10:14–30, and equivalents thereof |

**The Court adopts a modified version of WhatsApp's construction of this term.**

This dispute is similar to the one above.  The parties agree that this is a "means-plus-function" term governed by 35 U.S.C. § 112(f) and agree on the function of the claim element and a portion of the structure, Carrier Routing Table 120.  They further agree that Inter-Carrier Messaging Module 100 "has some relationship to the function recited," ECF No. 67, at 27.  The dispute centers on whether the Inter-Carrier Messaging Module is part of the structure, as proposed by WhatsApp, or whether the Court's construction should merely reference that the carrier routing table is used by the messaging module, as suggested by ICC.  The Virginia court adopted an approach similar to the construction proposed by ICC.

WhatsApp recites language from the specifications clearly demonstrating that the Inter-Carrier Messaging Module performs the function of "formulating a new digital message packet." The specification explains that "the Inter-Carrier Messaging Module 100 assembles a new short

United States District Court
Northern District of California

message, including the phone number with syntax added . . . , [and] the body of the short message," "automatically determin[es] the carrier provider servicing subscriber . . . and then add[s] (e.g., append[s]) the appropriate syntax to the phone number to actually address the short message." '748 patent, at 10:45–51, 11:42–47.  WhatsApp persuasively argues that the Carrier Routing Table alone cannot perform the function of "formulating a new digital message packet." A table or database may associate data, as discussed above, but it cannot create a new digital message packet.  Corresponding structure "must include all structure that actually performs the recited function."  Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc., 412 F.3d 1291, 1298 (Fed. Cir. 2005).  The Inter-Carrier Messaging Module should therefore be included in the structure.

ICC objects that the Inter-Carrier Messaging Module performs functions beyond those described this element, including the lookup functions discussed above.  See '748 patent, at 11:30–33.  Thus, in ICC's view, WhatsApp's construction would include a broad reference to structure that is divorced from the function specifically recited in this claim element.  But ICC cites no case law, beyond the decision of the Virginia court, supporting its formulation or suggesting that because the Inter-Carrier Messaging Module performs other functions in addition to the function of the claim element, it should not be listed as a portion of the structure.  This Court declines to simply reproduce the claim construction order in Mobile 365, as the Court does not have access to the Virginia court's analysis.

WhatsApp also asserts that this term is invalid for indefiniteness because the patents fail to disclose the requisite algorithms as structure, as required by the Federal Circuit.  See Function Media, L.L.C. v. Google, Inc., 708 F.3d 1310, 1318 (Fed. Cir. 2013).  Because it is unclear from WhatsApp's briefing whether it asserts that the claims with this term, however construed, are invalid for indefiniteness or whether it asserts only that ICC's construction of the term is invalid for indefiniteness, see ECF No. 72, at 29, and because WhatsApp bears the burden of overcoming the presumption of patent validity, the Court rejects this argument.

As in its discussion of the previous term, WhatsApp offers no reason why the statutory language, "and equivalents thereof" should not be included in the construction of this term.

18

Accordingly, the Court adopts WhatsApp's construction, modified to include the phrase, "and equivalents thereof."

**K.      "body" – '748 patent claims 6, 14 and '729 patent claim 1**

| WhatsApp's proposed construction | ICC's proposed construction |
|---|---|
| "the segment of a data packet containing the payload and following the header" | "the message entered by the sender and carried by the digital message packet" |

**The Court declines to construe this term.**

This term is not one of the ten terms the parties selected in their Joint Claim Construction and Pre-Hearing Statement.  ECF No. 54-1.  Patent Local Rule 4-3(c) requires the parties to identify "the terms whose construction will be most significant to the resolution of the case, up to a maximum of 10."  The Rule clearly states that "the total terms identified by all parties as most significant cannot exceed 10."  The parties requested and were granted permission to provide supplemental claim-construction briefing regarding an additional term, "in a common database," ECF No. 87, but made no such request with respect to this term.  Accordingly, the Court will not construe this term.

**L.      "in a common database" – '748 patent claim 3**

| WhatsApp's proposed construction | ICC's proposed construction |
|---|---|
| "stored as separate tables in a single database" | plain and ordinary meaning |

**The Court agrees with ICC that this term does not require construction.**

Claim 3 recites that the two databases previously cited in claim 1, "said database associating subscriber phone numbers with servicing carriers and said database associating carriers with routing syntax[,] are in a common database."  '748 patent, at 13:38–40.  ICC maintains that nothing in the claims, specification, or prosecution history limits the scope of this straightforward term, which, in its view, allows for "a wide array of programming and software for use with the invention."  ECF No. 92, at 5.  WhatsApp argues that the Court's construction should require that

United States District Court
Northern District of California

1    the two databases must be "stored as separate tables in a single database," and should not permit a

2    single table with no carrier lookup.  For support, WhatsApp points to the specification's

3    illustrations and descriptions of two separate tables and the patentee's statements to the Patent

4    Office distinguishing two prior patents.

5    　　　　The Court agrees with WhatsApp that the claim requires two distinct databases – one

6    associating subscriber phone numbers with carriers and one associating carriers with routing

7    syntax – within a common database.  The plain language of the claim does not cover a database in

8    which there is no carrier lookup.  However, nothing in the claim language restricts how the two

9    databases are to be housed in a common database or requires that they be "stored as separate

10   tables."  While the figures and descriptions in the specification do illustrate two separate tables,

11   see, e.g., '748 patent Fig. 2, they do not "reveal a special definition" or "an intentional disclaimer,

12   or disavowal, of claim scope by the inventor."  Phillips, 415 F.3d at 1316.

13   　　　　Similarly, WhatsApp's citations to the prosecution history do not demonstrate the "clear

14   and unmistakable disavowal of scope during prosecution" necessary to overcome the plain

15   language and limit the scope of the claims.  See Purdue Pharma L.P., 438 F.3d at 1136.  First,

16   WhatsApp quotes the patentee's statement distinguishing a patent to Holmes ("Holmes") on the

17   basis that:

18
        Holmes fails to disclose or suggest an inter-carrier messaging
19      module to receive a short message addressed with only a MIN
        number, to perform a lookup in a database associating subscriber
20      MIN numbers and in the database associating carriers with routing
        syntax, and to add routing syntax determined from the lookup to the
21      MIN number and receiving an initial short message addressed to a
        MIN only.
22

23   ECF No. 91-9, at 7.  The emphasis in this statement suggests that the patentee distinguished

24   Holmes on the basis that the '748 patent discloses a service that delivers messages addressed to a

25   phone number only, not on the basis of a dual database structure.  It therefore does not amount to a

26   clear, unmistakable disclaimer with respect to the structure of the "common database" referenced

27   in claim 3.  Second, WhatsApp references a statement distinguishing the '748 patent from a patent

28   to Vaudreuil on the basis that Vaudreuil "does not disclose a database associating carriers with

United States District Court
Northern District of California

routing syntax." ECF No. 91-10, at 20.  This limitation is clear from the plain language of the claim: "said database associating subscriber phone numbers with servicing carrier and <u>said database associating carriers with routing syntax</u> are in a common database." '748 patent, at 13:38–40 (emphasis added).  The statement does not provide a basis to read any additional limitation into the language of the claim.

## IV.   CONCLUSION

The Court construes the eleven disputed terms as follows:

| Disputed term | Construction |
|---|---|
| 1. "carrier" | "wireless cellular telephone service provider (such as Sprint, Verizon, AT&T, etc.)" |
| 2. "digital message packet"<br><br>"addressed with only a phone number" and "addressed to a phone number only" | "digital information including a header with network addressing information and a body"<br><br>"the only address information of the digital packet (or digital message packet) provided by the sender is a phone number" |
| 3.  "associating subscriber phone numbers with servicing carriers"<br>"associating a carrier providing service to said phone number"<br>"associating a different carrier providing service to said phone number" | plain and ordinary meaning |
| 4. "routing syntax"<br>"syntax" | "information which, when attached to or inserted within a telephone number, enables a message to be routed." |
| 5. "associating carriers with routing syntax"<br>"associated with said carrier providing service to said phone number" | plain and ordinary meaning |

United States District Court
Northern District of California

| 6. "add routing syntax determined from said lookup to said phone number"<br><br>"newly addressed to said phone number with a syntax" | plain and ordinary meaning |
|---|---|
| 7. "service bureau" | "provider of telecommunication services to carriers" |
| 8. "short text message" | "SMS text message" |
| 9. "means for associating a carrier providing service to said phone number" | **Function:** associating a carrier providing service to said phone number<br><br>**Structure:** MIN/Carrier database 110, as shown in Figs 3 (reference numeral 110), 4 and 6, and described in '748 patent at 9:63–10:13, and equivalents thereof |
| 10. "means for formulating a new digital message packet including a body of said initial digital message packet and newly addressed to said phone number with a syntax associated with said carrier providing service to said phone number" | **Function:** formulating a new digital message packet including a body of said initial digital message packet and newly addressed to said phone number with a syntax associated with said carrier providing service to said phone number<br><br>**Structure:** Inter-Carrier Messaging Module 100, Carrier Routing Table 120, as disclosed in '748 Patent Figs. 5 and 6 and described in 10:14–67 and 11:34–47, and equivalents thereof |
| 11. "in a common database" | plain and ordinary meaning |

**IT IS SO ORDERED.**

Dated:  October 16, 2014

_____

JON S. TIGAR
United States District Judge